## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHERISH D. BALL (2023-0807001), | |
| Plaintiff, | No. 22-cv-02219 |
| v. | Judge John F. Kness |
| DON BEACHEM, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cherish D. Ball brings this Section 1983 claim against Defendant Don Beachem. Plaintiff alleges that Plaintiff suffered a serious injury from inhaling secondhand smoke of synthetic marijuana while incarcerated at Cook County Jail. Plaintiff alleges that this injury was the result of constitutionally deficient conditions of confinement for which Defendant was responsible. Defendant now seeks summary judgment. For the reasons that follow, that motion is granted, and judgment is entered in Defendant's favor.

## I.    BACKGROUND

Plaintiff Cherish D. Ball, an inmate at the Cook County Jail, brought this *pro se* civil rights lawsuit under 42 U.S.C. § 1983, alleging that he was exposed to secondhand smoke from K2, or synthetic marijuana, during an earlier period of incarceration at the jail. (*See generally* Dkt. 1.) Now before the Court is Defendant's

motion for summary judgment (Dkt. 40). At the outset, the Court must determine what facts to consider in adjudicating Defendant's motion.

### A.    Local Rule 56.1 of the Northern District of Illinois

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Each stated fact "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). Disagreement with the stated facts "is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

2

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2. (Dkt. 43.) Plaintiff responded by filing a motion to deny summary judgment (Dkt. 46), which the Court has considered as part of his response; a response to Defendant's Statement of Facts (Dkt. 47 at 2–6); a Statement of Additional Material Facts (*id.* 11–14); what appears to be a Memorandum in response to the motion (*id.* 6–8); and a Declaration (*id.* 15–18). Defendant responded to Plaintiff's Statement of Additional Material Facts. (Dkt. 49.)

Where Plaintiff has not properly responded to one of Defendant's stated facts or has admitted it, the Court will accept that fact as true to the extent it is supported by the record. *Lamz*, 321 F.3d at 683 (7th Cir. 2003). Plaintiff's responses and factual assertions do not comply with the Local Rules 56.1(d) and (e), in that they do not consist of clearly numbered paragraphs and do not cite to the record for certain alleged factual assertions. But although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011), it will consider the facts identified by Plaintiff to the extent that those facts are supported by the record or that Plaintiff could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). In no event will the Court look beyond the cited material. *See Johnson v. Cambridge Indus.*, *Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

More broadly, Plaintiff's failure to comply strictly with Local Rule 56.1 is not a basis for automatically granting Defendant's motion for summary judgment. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

### B.    Material Facts

With the foregoing standards in mind, the following facts are taken as true for the purpose of adjudicating Defendant's motion for summary judgment. At all times relevant to this case, Plaintiff was a pretrial detainee at the Cook County Department of Corrections (CCDOC). (Dkt. 42 ¶ 2.)[1] Defendant is the Executive Director of Operations at the CCDOC. (*Id.* ¶ 5.) Plaintiff does not know the job duties of an executive director at CCDOC, and he has never spoken to Defendant. (*Id.* ¶¶ 6–7.) CCDOC detainees can access medical care at the jail through Cermak Health Services by submitting a Health Service Request Form ("Request Form") or sick call slip. (*Id.* ¶ 13.) Cermak Health Services falls under the Cook County Health & Hospitals System and not the CCDOC or the Cook County Sheriff's Office. (*Id.* ¶ 14.)

Plaintiff alleges that he was exposed to secondhand smoke by detainees smoking K2[2] and unknown substances. (*Id.* ¶ 11.) Plaintiff testified that the side

---

[1] Plaintiff is again confined at the jail, but his current conditions of confinement are not the subject of this lawsuit.

[2] K2 is a synthetic drug that is intended to mimic THC, the main psychoactive ingredient of marijuana. *See* United States Drug Enforcement Administration, Spice/K2, Synthetic Marijuana, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last visited April 8, 2024).

effects of K2 and these unknown substances are death, strokes, irregular heartbeats, brain death, seizures, and hallucinations. (*Id.* ¶ 12.) Plaintiff submitted approximately 113 Request Forms between Dec. 20, 2020, and May 4, 2022. (*Id.* ¶ 15.) In none of his Request Forms did Plaintiff complain of symptoms or concerns of death, strokes, irregular heartbeat, "brain death," seizures, or hallucinations. (*Id.* ¶ 16.) Plaintiff instead testified at his deposition that he experienced blurred vision, vomiting, shortness of breath, migraines, and inflammation as result of K2 exposure. (Dkt. 42, at ¶ 17.) Defendant states that none of Plaintiff's Request Forms involve complaints of blurred vision, vomiting, shortness of breath, migraines, or inflammation as they related to K2 or any unknown substances. (*Id.* ¶ 18.) Defendant contends that Plaintiff did not seek treatment for smoke inhalation or secondhand smoke. (*Id.* ¶ 19.)

Plaintiff disputes this, pointing to his deposition testimony indicating that he submitted between five and ten Request Forms related to the conditions complained of in this lawsuit. (Dkt. 47 at 3; *see* Dkt. 42-3 at 84:24–86:1.) In his Statement of Additional Facts, Plaintiff points to ten Request Forms that he apparently contends were related to his symptoms of secondhand smoke. (*See* Dkt. 47 at 14.) These were: a Nov. 6, 2021 Request Form in which Plaintiff complained of stomach pain, that he felt like harming himself or others, and that he wanted to speak to a "real doctor," not a nurse (Dkt. 45-1 at 42[3]); a Nov. 1, 2021 Request Form in which Plaintiff stated he was having chest pains and needed to talk to someone on the mental health team

---

[3] This Request Form is duplicated in the record, also appearing at Dkt. 45-1 at 56. Plaintiff cites it twice.

(*id.* at 43); a Sept. 9, 2021 Request Form in which Plaintiff asked to see a doctor, with no reason specified (*id.* at 51); an Aug. 10, 2021 Request Form in which Plaintiff complained of migraines for the past few weeks (Dkt. 45-2 at 10); an April 12, 2021 Request Form in which Plaintiff asked to "talk to someone . . . about my health" (*id.* at 28); an April 1, 2021 Request Form in which Plaintiff asked to talk to a doctor or nurse (*id.* at 36); a Jan. 2, 2022 Request Form in which Plaintiff asked for an inhaler (*see* Dkt. 45-1 at 32); a Dec. 20, 2021 Request Form in which Plaintiff complained of breathing problems due to "no air in my cell" (*id.* at 33); a March 7, 2021 Request Form in which Plaintiff asked to see an eye doctor, with no reason specified (Dkt. 45-2 at 41); and a March 1, 2021 Request Form in which Plaintiff asked to see a doctor, with no reason specified (*id.* 47.) None of these requests mentions K2 or any other toxic substance or unknown drug. (*See* Dkt. 49, at 6.) Plaintiff also contends, without citation to the record, that he presently suffers from blurred vision, shortness of breath, and inflammation, presumably due to his exposure to K2. (Dkt. 47 at 3.)

Plaintiff was housed in Division 9, Tier 2A from March 11, 2022, to April 18, 2022. (Dkt. 42 at ¶ 20.) On March 12, 2022[4], correctional officers at the jail conducted their mandatory 30-minute checks pursuant to policy. (*Id.* ¶ 21.) During one of the security checks, officers observed a detainee acting in an unusual manner. (*Id.* ¶ 22.) Officers believed the detainee was under the influence of an unknown substance. (*Id.* ¶ 23.) The detainee was taken off the tier to receive medical attention. (*Id.* ¶ 24.)

---

[4] Defendant's Statement of Facts contains a typographical error referring to the date as March 12, 2023. The parties agree the correct date is March, 12, 2022. (*See* Dkt. 49 at 3.)

A correctional lieutenant identified Plaintiff as one of the detainees smoking on the tier that day, although Plaintiff denies this. (*Id.* ¶ 25; *see also* Dkt. 47 at 12; Dkt. 49 at 3–4.) Plaintiff, along with other detainees, received disciplinary infractions for the March 12, 2022, incident. (*Id.* ¶ 26.) Plaintiff disputes that he was disciplined for smoking, explaining that the disciplinary charges were for disorderly conduct and arson. (*See* Dkt. 47 at 4; *see also* Dkt. 42-9 at 2.) CCDOC policy does not permit detainees to use or possess contraband, including drugs, alcohol, or items prohibited by criminal law. (Dkt. 42, at ¶ 27.) Plaintiff was found guilty of disorderly conduct and not guilty of arson; the report indicates that Plaintiff was found guilty of a lesser offense. (*See* Dkt. 42-9, at 4.) Plaintiff lost commissary privileges for fourteen days. (Dkt. 42 ¶ 28.)

On March 28, 2022, Plaintiff submitted a grievance complaining about K2 smoke, secondhand smoke, and burning wicks. (*Id.* ¶ 29.) In the section titled, REQUIRED – NAMES and/or IDENTIFIER(S) of ACCUSED, he listed "CCDOC." (*Id.* ¶ 30; Dkt. 42-11.) Plaintiff testified that he named "CCDOC" as the accused because he was naming the jail as an entity. (*Id.* ¶ 31.) Plaintiff did not identify Defendant in the March 28, 2022, grievance. (*Id.* ¶ 32.) Defendant did not receive or respond to the grievance. (*Id.* ¶¶ 33, 36.)

On April 4, 2022, the grievance was referred to Division 9. (*Id.* ¶ 34.) Plaintiff received a response on April 26, 2022, from a Division 9 correctional lieutenant. (*Id.* ¶ 35.) The response indicated that jail staff was unaware of K2 in the CCDOC, and that this information would be forwarded to Special Investigations so that the

complaining detainee (Plaintiff) could be interviewed about possible illegal drugs in the jail. (*Id.* ¶ 37.) Plaintiff disputes that jail staff were unaware of the presence of K2 in the jail, apparently because he contends such information was included in briefings during correctional officers' roll call, but Plaintiff points to no such evidence in the record. (*See* Dkt. 47 at 5–6.) Plaintiff states that he was not interviewed about the possible presence of drugs in the jail. (*Id.* at 6.) Plaintiff appealed the grievance response. (*See* Dkt. 42-11 at 3.)

In all, Plaintiff submitted eighteen grievances while detained at the Cook County Jail during the relevant time period. (Dkt. 42 at ¶ 38.) The other grievances do not identify Defendant or discuss K2. (*Id.* ¶ 39.) Defendant did not receive or respond to any of Plaintiff's grievances. (*Id.* ¶ 40.)

The CCDOC maintains a formal grievance procedure for individuals in custody. (*Id.* ¶ 41.) The Inmate Handbook outlines this grievance procedure. (*Id.* ¶ 42.) The grievance form itself also provides an explanation of the grievance process. (*Id.* ¶ 43.) It instructs individuals in custody to provide the specific date, location, and time of the incident, problem, or event about which they are grieving, to provide the names and/or identifiers of the accused person, and to submit the grievance within fifteen days of the incident about which they are complaining.[5] (*Id.* ¶ 44.)

CCDOC procedures prohibit detainees from possessing any contraband. (*Id.* ¶ 45.) Correctional officers assigned to the tiers are required to conduct routine

---

[5] Plaintiff disputes that the grievance policy in effect at the relevant time required the identity of the person accused. (*See* Dkt. 47 at 11.) The grievance form, itself, however, does specify that the name and/or identifiers of the accused are required. (*See* Dkt. 49 at 1–2; *see also* Dkt. 42-11 at 2.)

checks of the living units throughout each day, which are conducted every thirty minutes on an irregular or staggered schedule. (*Id.* ¶ 46.) Officers also can conduct unannounced, random searches of the living units at any time. (*Id.* ¶ 47.) These searches are conducted even if the detainee is not present. (*Id.* ¶ 48.) Officers may conduct strip searches of inmates under limited circumstances when there is a reasonable belief that the inmates may be in possession of contraband. (*Id.* ¶ 49.) Detainees also are subject to pat down frisk searches at any time. (*Id.* ¶ 50.) Plaintiff points out, and Defendant does not dispute, that the Inmate Handbook prohibits inmates from starting any type of fire. (*See* Dkt. 47 at 12.) But Plaintiff contends that other detainees were doing so, citing his own March 28, 2022 grievance. (*See id.*)

Plaintiff, naming Defendant as the Executive Director of Operations at the jail, stated that Defendant's responsibilities included supervising jailhouse staff in monitoring and enforcing disciplinary, safety, and custodial measures. (*See* Dkt. 47 at 11.) The portion of the record Plaintiff cites to for this proposition, however, is his own deposition testimony in which he stated only that Defendant was the executive director. (*See* Dkt. 42-3 at 54:24–55:2.) Plaintiff testified that he did not know the job responsibilities of an executive director. (*See* Dkt. 49 at 2.) There is no evidence in the record as to what those job responsibilities were.

Plaintiff contends, without any citation to the record, that "Defendant cannot dispute that there is a[n] ongoing problem in the [CCDOC] pertaining Plaintiff complaint filed of the K2 smoke, unknown toxic and substances [secondhand] smoke and burn wicks in the food." (*See* Dkt. 47 at 13.) Similarly, and again without citation

9

to the record, he contends: "Defendant cannot deny or dispute that (IIC) individual in custody has suffered from smoking K2 smoke unknown toxic and unknown drugs and substances has caused the symptom's death, strokes, irregular heartbeats, 'brain death,' seizures, and hallucinations." (*See id.* (verbatim).) These are legal conclusions, not statements of fact, and are not supported by the record. They will, therefore, be disregarded. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n. 2 (7th Cir. 2008) (inappropriate to make legal arguments in a 56.1 statement of facts).

## II.  STANDARD OF REVIEW

On summary judgment, the Court must view the record in the light most favorable to the nonmoving party and grant the motion if the movant "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of demonstrating an absence of any genuine issue of material fact. *Id.* 323. If that burden is met, the burden "shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is genuine when a reasonable jury could return a verdict

in favor of the nonmoving party. *Id.* Although courts must draw all inferences in favor of the nonmoving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must set forth specific facts showing a genuine issue for trial." *Abrego v. Wilkie*, 907 F.3d 1004, 1011–12 (7th Cir. 2018) (citing *Matsushita*, 475 U.S. at 587).

## III. DISCUSSION

Defendant contends that summary judgment is proper for numerous reasons. Specifically, Defendant argues that: (1) Plaintiff did not exhaust his administrative remedies; (2) Plaintiff fails to establish a prima facie conditions-of-confinement claim because the conditions complained of are not sufficiently serious and Defendant lacked any personal involvement in the alleged violation of Plaintiff's rights; (3) Defendant is immune from suit; and (4) to the extent Plaintiff intended to bring an official capacity claim, that claim fails.

### A. Administrative Remedies

Defendant first argues that summary judgment is proper because Plaintiff failed to exhaust his administrative remedies by not naming Defendant or identify anyone who could have been Defendant in relevant grievances. (Dkt. 41 at 5–6.)

The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaint to first exhaust his available administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). This requirement

is mandatory: "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Crouch*, 27 F.4th at 1320, *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Because failure to exhaust is an affirmative defense, the burden is on the defendant to prove that the plaintiff failed to exhaust an available administrative remedy. *Crouch*, 27 F. 4th at 1320; *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

The PLRA does not specify how detailed a prisoner's grievance must be to exhaust his administrative remedies; rather, those requirements are found in the facility's grievance procedures. *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). A grievance need not always identify the jail personnel responsible for the alleged constitutional violation. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (grievance was sufficient where it provided enough detail about a particular administrative decision for the prison to identify the individual responsible). A grievance is sufficient if it gives correctional officials "a fair opportunity" to address the complaint. *Id.*; *see Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (grievance sufficient if it provides notice of the nature of the wrong for which the prisoner is seeking redress and "objects intelligibly to some asserted shortcoming.").

Where the grievance form requires an inmate to provide identifying information about the responsible officers (as it did here), and the grievance and circumstances do not allow an inference that the inmate is complaining about a particular official, it may be insufficient to exhaust his administrative remedies. *See*

*Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013) (district court properly narrowed case where grievances never mentioned certain defendants by name or inference); *see also Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (grievance that did not name defendant or provide information that "should have identified him to the grievance officer" was fatally defective).

A failure to include the named defendant in a grievance, however, may be a "mere technical defect" if the inmate sufficiently describes the alleged wrongdoing to allow correctional officials a fair opportunity to respond. *See Bratcher v. Nicholson*, No. 19 C 8190, 2023 WL 2539032, at *4 (N.D. Ill. Mar. 16, 2023) (grievance was sufficient where it did not include officers' names, but contained enough detail to allow prison officials to identify the conduct at issue and determine which staff members allegedly were responsible). This is particularly true where, as in this case, correctional officials did not rely on the asserted procedural shortcoming in addressing the grievance. *See Maddox*, 655 F.3d at 721–22 (correctional officials addressing a grievance on the merits is evidence that the grievance sufficiently alerted officials and invited corrective action); *see also Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) (grievance that complained generally about placement in a cell with "a chain smoker" was sufficient and observing that "it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision.").

13

In the Court's view, the grievance in this case was sufficient to alert jail officials to Plaintiff's complaint that inmates had smoked K2 or other drugs on several occasions, making him ill. (*See* Dkt. 42-11.) In addition, Plaintiff's identification of "CCDOC" as the accused reflects that Plaintiff was complaining that jail administrators, of which Defendant was one, were not properly handling this problem. (*See* Dkt. 42-3 at 103:10–11 (Plaintiff intended to name the jail "as an entity.").) Regardless of whether Plaintiff has brought forth sufficient evidence to move forward on his claim, which is a separate issue and will be discussed below, his grievance was sufficient to alert jail officials to the nature of the problem. Summary judgement for failure to exhaust administrative remedies is therefore unwarranted.

## B. Individual Capacity Conditions-of-Confinement Claim

As a pretrial detainee at the time of the alleged events, Plaintiff's claims arise under the Fourteenth Amendment and are governed by the objective reasonableness standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022); *Hardeman v. Curran*, 933 F. 3d 816, 823 (7th Cir. 2019). This standard requires an assessment of the defendant's conduct to determine if he or she purposefully, knowingly, or recklessly acted in an objectively unreasonable manner with respect to jail conditions that deprived a detainee of basic human needs. *See Redman v. Downs*, 854 F. App'x 736, 738 (7th Cir. 2021). Negligence or gross negligence is not enough. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018).

14

Defendant argues that Plaintiff has not established a prima facie conditions-of-confinement claim because: (1) the conditions Plaintiff describes are not sufficiently serious; and (2) Plaintiff has not brought forth evidence of Defendant's personal involvement in the alleged constitutional deprivation. (Dkt. 41 at 6.) These arguments are addressed in turn.

As to the objective seriousness of the condition, pretrial detainees are entitled to be free of conditions that amount to punishment. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)). Punishment in the constitutional sense "generally requires allegations of extreme deprivations over an extended time." *Miller v. Winnebago Cnty. Sheriff's Off.*, No. 18 C 50334, 2019 WL 184078, at *2 (N.D. Ill. Jan. 14, 2019) (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Bell*, 441 U.S. at 542). In this regard, the Constitution does not require correctional facilities to provide a "maximally safe environment" free of pollution or safety hazards. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).

Exposure to secondhand smoke may support a conditions-of-confinement claim, but to prevail on such a claim, an inmate must demonstrate that the level of secondhand smoke in his cell was unreasonably high, and that the smoke caused or is likely to cause him serious health problems. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Oliver v. Deen,* 77 F.3d 156, 159–61 (7th Cir. 1996); *see also Gurley v. Sheahan*, No. 06 C 3454, 2009 WL 2178685, at *6 (N.D. Ill. July 21, 2009) ("[s]ubjection to secondhand smoke does not normally violate a prisoner's constitutional rights" and that the mere possibility of an increased risk of a smoke-

15

related disease is not actionable). Further, an inmate who seeks damages for future injury must "show 'to a degree of reasonable medical certainty' that he actually faced an increased risk of injury." *Gray*, 826 F.3d at 1007 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 851 (7th Cir. 1999)).

Plaintiff has not brought forth evidence that he suffered a serious injury from the alleged exposure to K2 or other unknown substances. Plaintiff testified that he experienced blurred vision, vomiting, shortness of breath, migraines, and inflammation because of K2 exposure. And he contends that he currently suffers blurred vision, shortness of breath, and inflammation, which he presumably contends was caused by his exposure to K2, although he offers no support for this proposition.

These types of symptoms generally are not objectively serious enough to implicate constitutional concerns. *See*, *e.g.*, *Henderson*, 196 F.3d at 846 (breathing problems, chest pains, dizziness, sinus problems, headaches and loss of energy from secondhand smoke exposure were "relatively minor"); *Knox v. Butler*, No. 17-CV-572, 2020 WL 3412992, at *3 (S.D. Ill. June 22, 2020) (summary judgment warranted in secondhand tobacco smoke case where plaintiff described only symptoms of coughing, eyes watering, constant headaches, and dizziness); *Gurley*, 2009 WL 2178685, at *6 (asthmatic inmate who complained about breathing difficulties due to exposure to secondhand smoke did not describe an objectively serious deprivation). Although Plaintiff explains that he suffers from asthma, Plaintiff testified that he had no other breathing or respiratory issues, and his last asthma attack was over ten years ago. (*See* Dkt. 42-3 at 25:5–14.)

Further, none of Plaintiff's Request Forms mention exposure to K2 or any other toxic substance, nor does Plaintiff point to any evidence in the record linking his ailments, past or present, to drug exposure. Unsupported allegations that environmental conditions caused physical ailments that Plaintiff would not otherwise have suffered are insufficient to create a genuine issue of fact. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *see Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008) (summary judgment warranted where plaintiff's medical records did not substantiate a causal link between cell conditions and his ailments). Plaintiff's own beliefs about the cause of his symptoms are insufficient to create a question of fact. *Vasquez v. Braemer*, No. 11-cv-806, 2013 WL 4084284, at *14 (W.D. Wis. Aug. 13, 2013). And neither is Plaintiff's assertion, unsupported by any evidence, that he presently suffers from blurred vision, shortness of breath, and inflammation, allegedly due to his exposure to K2.

Finally, to the extent that Plaintiff is claiming a risk of future harm to his health due to smoke exposure, he was obligated to bring forth expert testimony establishing that there was "a reasonable medical certainty that he himself faces some defined level of increased risk of developing a serious medical condition" due to his exposure to secondhand smoke. *See Knox*, 2020 WL 3412992, at *4 (cleaned up). Plaintiff has not done so. In sum, Plaintiff has not brought forth evidence that he was subjected to conditions that amounted to punishment.

As to whether there is sufficient evidence of Defendant's personal involvement in the alleged constitutional deprivation, a plaintiff seeking damages from a

defendant in his individual capacity must establish that the defendant was personally responsible for the deprivation of a constitutional right. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). A plaintiff cannot base a claim against a supervisory official on *respondeat superior* because a claim under Section 1983 requires personal involvement on the part of each named defendant. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Personal involvement can be demonstrated where the conduct occurred at the defendant's direction or with his knowledge and consent. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.")

At the pleading stage, the Court allowed Plaintiff to proceed because Plaintiff described a potentially systemic problem with inmates smoking K2 or other drugs. (*See* Dkt. 9 at 3.) As the Court explained, the personal involvement of senior jail officials can be inferred at the pleading stage when the plaintiff alleges "potentially systemic" as opposed to "clearly localized" constitutional violations. *Smith*, 803 F.3d at 309 n.2. The doctrine also has been applied at the summary judgment stage. *See Gray*, 826 F.3d at 1008–09.

In *Gray v. Hardy*, the plaintiff presented evidence at the summary judgment stage of a pervasive pest infestation, including insects, birds, and mice, with pests entering through broken windows and holes in the walls. *Id.* 1003–04. The plaintiff, allegedly suffering from asthma attacks and skin rashes, contended that prison policies resulted in a dearth of cleaning supplies, compounding the problem. *Id.* at

18

1004. In finding that an inference of a systemic problem of which the defendant warden was aware was warranted at the summary judgment stage, the appeals court observed that there was sufficient evidence in the record of pervasive pest infestations as well as evidence that the warden was personally responsible for changing prison policies so that the conditions would be addressed. *See id.* at 1008– 09.

A systemic violation, like the one in *Gray v. Hardy*, is a condition that affects a widespread group of inmates, such as a vermin infestations, extreme temperatures, inadequate recreation or nutrition, or similar issues. *Eason v. Pritzker*, No. 18-cv-2553, 2020 WL 6781794, at *5 (N.D. Ill. Nov. 18, 2020). The strength of the inference of a systemic condition depends on the number of prisoners exposed to a given condition and the frequency of that exposure. *See Willis v. Williams*, No. 17-cv-3297, 2022 WL 4599260, at *18 (N.D. Ill. Sept. 30, 2022). As more prisoners are exposed to a condition, it becomes increasingly reasonable to infer that high-ranking correctional officials are aware of the condition. *Id.* For this reason, "the systemic condition doctrine has been applied most often in cases challenging conditions or policies that affect a large number of prisoners on a more-or-less continuous basis." *Id.*

In his response to the summary judgment motion, Plaintiff points to no evidence as to the frequency of use of K2 or other substances by inmates at the relevant time. Plaintiff's deposition testimony on this point is vague. Plaintiff testified that he first learned of the drug when his cellmate passed out in the shower. (Dkt. 42-3 at 62:23–24.) Plaintiff could not describe exactly what the drug looked like,

19

testifying, "[a]ll I know is it's paper." (*Id.* 63:10–11.) Plaintiff described seeing the drug in the different units in which he resided (except the "old man" deck) (*see id.* 64:22–65:5) and described use of the drug as an "epidemic" (*see id.* 70:8–23), but Plaintiff did not elaborate as to what he specifically observed at the Cook County Jail that led him to draw that conclusion. Plaintiff stated, "Like, it's not just in Cook County. I don't even know if it started off in Cook County. What I know now it's in every IDOC. It's everywhere now. People are dying and having heart problems and brain aneurysms and everything everywhere . . . ." (*Id.* 70:11–15.)

Accompanying his summary judgment materials is a declaration by Plaintiff, but this declaration does not elaborate on the frequency of use of K2 in the jail. (*See* Dkt. 47 at 15–18.) Plaintiff states instead that he witnessed other individuals in custody "smoking and having man made burning wicks." (*Id.* ¶ 1.) Plaintiff also states that he had observed inmates having strokes, irregular heartbeats, breath death, seizures, and hallucinations, and being carried out on gurneys after smoking K2 or other toxic substances. (*Id.* ¶ 2.) But Plaintiff points to no evidence in the record as to the frequency of these events, nor is there any evidence Plaintiff is qualified to render an opinion as to whether drug use caused the health issues he says he observed.

Summary judgment is the "put up or shut up moment in a lawsuit." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010) (cleaned up). Unlike in *Gray v. Hardy,* Plaintiff has not brought forth sufficient evidence at the summary judgment stage for the Court to draw an inference of a systemic problem that affected a large group of

inmates on a continuous or nearly continuous basis. Nor does Plaintiff point to evidence in the record indicating that Defendant, whose job duties he does not know, was responsible for jail policies that would have ameliorated this problem. Plaintiff therefore cannot proceed at this stage based on an inference of personal involvement by Defendant.

Nor has Plaintiff otherwise presented evidence of Defendant's personal involvement. Plaintiff states in his declaration that the CCDOC and its staff were aware of an "epidemic of smoking issues" and of the presence of K2 and other drugs in the jail. (*See* Dkt. 47 at 16–17, ¶¶ 3, 9.) But these conclusory statements, which in any event do not concern Defendant specifically, do not appear to be based on any personal knowledge on the part of Plaintiff, and therefore cannot be considered. *See Trapaga v. Cent. States Joint Bd. Loc. 10*, No. 05 C 5742, 2007 WL 1017855, at *18 (N.D. Ill. Mar. 30, 2007) (striking statements where affiants were not privy to what defendant knew, or its intent or motivation); *see also* Fed. R. Evid. 602 (witness may testify to matter only if evidence is introduced sufficient to support a finding of personal knowledge).

There is no other evidence in the record to support a finding of personal involvement on the part of Defendant. Plaintiff testified that he never spoke to Defendant. (*See* Dkt. 42-3 at 58:9–10.) Plaintiff stated that he wrote Defendant a letter asking to be moved to a non-smoking deck, but Plaintiff did not receive a reply and did not know whether Defendant ever received the letter. (*See id.* at 60:4–62:9.) Nor did Defendant receive or review the grievance Plaintiff submitted complaining

about the presence of K2 in the jail or any of Plaintiff's request forms concerning medical care (which themselves did not mention K2).

For the reasons provided above, the Court holds that Plaintiff has failed to establish a prima facie conditions-of-confinement claim. Summary judgment in Defendant's favor is therefore proper.

### C.     Qualified Immunity

Given Plaintiff's failure to present evidence of Defendant's personal involvement, the Court need not consider Defendant's immunity argument.

### D.     Official Capacity Conditions-of-Confinement Claim

Municipalities are not vicariously liable for the constitutional torts of their employees or agents. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Rather, municipalities are liable under Section 1983 only for their own constitutional violations. *Id.* To establish a violation under this standard, a plaintiff must show that he or she was deprived of a federal right. *Id.* (citing *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021)). Beyond that, the plaintiff must link the deprivation to a policy or custom of the entity, meaning "(1) an express policy that causes a constitutional deprivation when enforced, (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* In sum, the plaintiff must bring forth evidence that the municipality's actions caused a deprivation of the plaintiff's rights, and that

the municipality took the action "with conscious disregard for the known or obvious risk of the deprivation." *Id.* 236.

For all the reasons set forth above, Plaintiff has not brought forth evidence that he was deprived of a federal or constitutional right. And it is undisputed that the CCDOC had policies prohibiting smoking or possession of contraband in the jail. It also is undisputed that jail policies direct officers to conduct routine checks of cells and living units, that random searches of cells are permitted at any time, and that detainees are subject to pat-down and strip searches if officers reasonably believe the detainees possess contraband.

Plaintiff does not point to any evidence that Defendant had final policymaking authority. Nor does he identify a policy or custom of permitting or allowing detainees to smoke K2 or other substances. In his response to the summary judgment motion, Plaintiff merely restates the requirements of an official-capacity claim, arguing that "Plaintiff establish[ed] that CCDOC maintained an unconstitutional and widespread policy and that Plaintiff was harmed directly due to such policy." (*See* Dkt. 47 at 7.) Again, at this stage of the case, Plaintiff must bring forth evidence to support his claims, and conclusory allegations are not enough. For these reasons, summary judgment is granted as to any official capacity claim as well.

## IV. CONCLUSION

Defendant's motion for summary judgment (Dkt. 40) is granted. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of

the entry of judgment on the docket. *See* Fed. R. App. P. 4(a)(1).[6] If Plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to lack merit, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g).

SO ORDERED in No. 22-cv-02219.

Date: August 22, 2024

JOHN F. KNESS
United States District Judge

---

[6] Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Plaintiff of course remains free to proceed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

24